**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION**



SLAY'S RESTORATION, LLC,

     Plaintiff,

v.                                                                    Civil Action No.: _4:15 cv 140_

WRIGHT NATIONAL FLOOD INSURANCE
COMPANY

SERVE:      CT Corporation System
              4701 Cox Road, Suite 285
              Glen Allen, VA  23060


COLONIAL CLAIMS CORPORATION                         **TRIAL BY JURY DEMANDED**

SERVE:      CT Corporation System
              1200 South Pine Island Road
              Plantation, FL  33324


KLSM CONSULTING GROUP, INC.
D/B/A KD CONSULTING &
APPRAISAL GROUP

SERVE:      KLSM Consulting Group, Inc.
              Registered Agent Jeffrey P. Kaiser
              7085 SW 47 Street
              Miami, FL  33155

CIS GROUP LLC

SERVE:      Corporation Service Company
              d/b/a CSC Lawyers Inco.
              211 E. 7th Street, Suite 620
              Austin, TX 78701

SAMUEL WOODARD

SERVE:      6170 Acord Blvd.
              Punta Gorda, FL  33982-2137

JEFFREY NICHOLL

SERVE:      4050 40th Way
            Saint Petersburg, FL  33711-4257

MICHAEL CARMELIA

SERVE:      3605 Coyote Creek Drive
            Tallahassee, FL  32301

JEFFREY P. KAISER

SERVE:      19224 Bobolink Drive
            Hialeah, FL  33015-2436

    Defendants.

## COMPLAINT

    NOW COMES the Plaintiff, Slay's Restoration, LLC, by counsel, and for its Complaint

against all Defendants, jointly and severally, Wright National Flood Insurance Company

("Wright Flood"), Colonial Claims Corporation ("Colonial"), KLSM Consulting Group, Inc.

d/b/a KD Consulting & Appraisal Group ("KD Consulting"), CIS Group LLC ("CIS Group"),

Samuel Woodard ("Woodard"), Jeffrey Nicholl ("Nicholl"), Michael Carmelia ("Carmelia"), and

Jeffrey P. Kaiser ("Kaiser") (collectively "Defendants") for violations of RICO, 18 U.S.C.

§1962(c) states as follows:

I.
INTRODUCTION

    1.      This is a civil action related to a criminal enterprise engaged in a pattern of

racketeering activity, and a conspiracy to engage in racketeering activity involving numerous

RICO predicate acts during the past year and a half.  The predicate acts alleged here cluster

around mail and wire fraud.

2

2.      This case involves a scheme whereby an insurance carrier, insurance adjustors, reviewers and experts generated false reports to process insurance payments under the National Flood Insurance Program ("NFIP"). By generating the false reports as described below, the Defendants benefitted from, or conspired to benefit from, denial or underpayment of insurance claims. If claims are denied or underpaid, KD Consulting, CIS Group, and others were able to benefit from unnecessary claims handling expenses. Colonial benefits by participating in the scheme and receiving future work from Wright Flood. As more fully described below, Wright Flood participated in the scheme so that it could justify denying or underpaying claims. By denying or underpaying claims, Wright Flood avoided being audited by FEMA and potentially having to reimburse FEMA for prior payments received for administering a "Write Your Own" ("WYO") program.

3.      Based on information and belief, Wright Flood sought to deny or underpay insurance claims based upon fraudulent reports issued by Woodard, CIS Group and KD Consulting. Wright Flood had knowledge of the fraud at the time the fraud was committed. In the alternative, Wright Flood was "willfully blind" or engaged in "conscious avoidance" regarding the illegal and fraudulent actions of its agents; therefore, Wright Flood is liable for the scheme and for damages suffered by Plaintiff.

4.      CIS Group and KD Consulting, through their employees or agents, fabricated and included authors on knowingly inaccurate reports to give the fraudulent reports credibility. The remaining Defendants blindly accepted the conclusions despite being presented evidence to the contrary. The Defendants were presented with evidence of the falsity of the reports in August 2015 and on October 30, 2015. Despite Defendants' knowledge, the Defendants continue to fail and refuse to fully pay Plaintiff or the insureds for work Plaintiff performed.

## II.
## PARTIES

5.     Plaintiff is in the business of restoration of buildings, real estate, facilities and structures that have been damaged following floods, fires, tornadoes and other major catastrophic events.

6.     Defendant KD Consulting is a consulting and appraisal firm based in Florida.

7.     Defendant CIS Group is an adjusting and consulting firm based in Texas.

8.     Defendant Colonial is an adjusting firm based in Florida.

9.     Defendant Wright National Flood Insurance Company was and is a private insurance company incorporated under the laws of the State of Florida. Wright Flood is a WYO carrier participating in the NFIP pursuant to the National Flood Insurance Act ("NFIA"), as amended 42 U.S.C. §4001, *et seq*. Wright Flood was and is responsible for arranging the adjustment, settlement, payment, and defense of all claims arising under the NFIP policies.

10.     Defendant Woodard is a mitigation reviewer and an employee of either KD Consulting or CIS Group, residing in Texas.

11.     Defendant Nicholl is an employee of Wright Flood residing in Florida.

12.     Defendant Carmelia is a loss consultant residing in Florida employed by KD Consulting.

13.     Defendant Kaiser is a Florida resident who was a KD Consulting employee and is a mitigation professional.

## III.
## JURISDICTION AND VENUE

14.     This Court has jurisdiction over the subject matter of this action pursuant to 18 U.S.C. §§1961, 1962, 1964, 28 U.S.C. §§1331 and 1367. The Court has personal jurisdiction

4

over defendants pursuant to 18 U. S. C. §1965 (a) (b) and (d) as Defendants transacted their affairs in this district and ends of justice require Defendants be brought before this Court.

15.     This Court is a proper venue for this action pursuant to 18 U.S.C. §1965 (a) and 28 U.S.C. §1391 (b) (2). Venue is proper in this judicial district because a substantial part of the events and omissions giving rise to the claim occurred in this district.

IV.
SUBSTANTIVE ALLEGATIONS

16.     As more fully described below, after a September 2014 loss, Wright Flood dispatched Colonial to adjust City Line Associates, LP's ("City Line") claims.  Ultimately, City Line engaged First Atlantic Restoration, Inc. ("First Atlantic") to perform emergency services to its Newport News, Virginia property.  First Atlantic in turn subcontracted with Plaintiff to perform the drying of the property after the flood waters receded.

17.     Upon information and belief, Colonial hired KD Consulting and CIS Group (the "Consultants") to review applications for payment by First Atlantic and Plaintiff.  The Consultants reviewed the processes employed by Plaintiff and First Atlantic and reviewed billings for drying work performed.

18.     The Consultants generated incorrect and ultimately fraudulent reports regarding the City Line claims to reduce the amount that would be paid to Plaintiff.  The sham reports were used by the flood insurance carrier, Wright Flood, as an artifice to deny or otherwise reduce City Line's legitimate claims for insurance benefits and, in turn, reduce the sum City Line was to pay Plaintiff or First Atlantic.

19.     Defendants know that Wright Flood garners economic benefit from the unwarranted denial of NFIP claims and Wright Flood will in turn continue employing Colonial, KD Consulting, CIS Group, Woodard, Carmelia and Kaiser and pay them unwarranted

consulting fees for their claims handling work. Colonial, KD Consulting, CIS Group, Woodard, Carmelia and Kaiser know that the money they receive for their services comes from funds administered pursuant to the NFIP.

20.     Wright Flood and Nicholl participated in the scheme to wrongfully and illegally deny the City Line claims. Based on FEMA's methods for reimbursing WYO carriers for the costs associated with administering the WYO program, Wright Flood profits by systematically increasing claim handling expenses, including amounts paid to Colonial and/or the Consultants. An unintended consequence of the WYO reimbursement protocol is that the more expenses Wright Flood can attribute to claims handling, the more money it will receive from FEMA and the NFIP for administering the program. A 2009 report of the U.S. Government Accountability Office ("GAO") found that WYO carriers received reimbursement for expenses above the amount actually incurred. In fact, to just six of the 87 participating carriers, FEMA paid $327.1 million more than their actual expenses, according to that report. On average, WYO insurers retain 30 to 40 percent of the flood insurance premiums they collect as reimbursement and payment for services rendered to FEMA to cover the cost of managing the flood policies they write. The GAO report indicates this is excessive when compared against actual expenses. Wright Flood and its claims handlers, such as Colonial, KD Consulting, CIS Group, Woodard, Carmelia and Kaiser collectively stood to benefit from increasing expenses and passing them along to FEMA for reimbursement.

21.     Wright Flood and Nicholl know that Wright Flood may be responsible if a claim is overpaid. Wright Flood risks an audit by FEMA and/or other governmental entities if amounts paid out exceed an expected threshold. Therefore, Wright Flood and Nicholl sought to underpay the legitimate Newport News loss claims and either knowingly or with willful blindness accepted

the fraudulent claims handling analysis touted by the Consultants, Woodard, Carmelia and Kaiser blindly accepted by Colonial for their mutual benefit.

22.    The Defendants refused to recommend full payment of 17 of the 18 City Line claims, even when it was obvious that liability was clear. Instead, the Defendants pushed for analysis because the claims were significant. The Consultants, Woodard, Carmelia and Kaiser made bold incorrect statements in their reports and added authors to the reports that not only were uninvolved in reaching the conclusions, but completely disagreed with the reports.  At the same time, Nicholl stressed the competence and extensive resumes of the individuals who allegedly authored the reports in order to convince Plaintiff, City Line and First Atlantic to accept the conclusions. This scheme was used to deny payment to Plaintiff.

23.    On September 9, 2014, Newport News, Virginia experienced excessive amounts of rainfall that resulted in stream flooding.  The 200 units of City Line Apartment Complex owned by City Line were especially hard hit and most residents were forced to evacuate.

24.    City Line made 18 claims with its flood insurance carrier, Wright Flood, related to 18 buildings. Wright Flood engaged Colonial to inspect City Line's property and document the claims.

25.    City Line, First Atlantic and Plaintiff had been through this process before having dealt with flooding at the same property in prior years.  As a result, First Atlantic and Plaintiff were aware of how important it was to document their work since Wright Flood had adjusted the amount paid to City Line down by a substantial amount in prior floods, with First Atlantic and Plaintiff protesting the adjustments to no avail.

26.    For the drying portion of the work, Plaintiff performed all services and provided all materials because First Atlantic subcontracted the entire scope of work to Plaintiff.  Thus,

Plaintiff was in direct communication with Colonial and the Consultants regarding the claims adjustment.

27.     Plaintiff performed its work consistent with ANSI/IICRC S500 Standard and Reference Guide for Professional Water Damage Restoration as well as FEMA Memorandum W-13025a, which provide guidance for remediation services for NFIP losses.

28.     Upon completion of drying 18 structures, Plaintiff and First Atlantic submitted materials to City Line who submitted them to the Defendants requesting in excess of $1.2 million in payment for First Atlantic and Plaintiff's work on the 18 claims. Plaintiff was to receive 80% of the amount ultimately paid with First Atlantic retaining 20%. Plaintiff assembled the materials and submitted them with the 2012 process in mind and with representations from Colonial or the Consultants as to how Wright Flood desired application be made.

29.     After submitting materials to Defendants to receive payment, First Atlantic inquired to Patrick Durtschi, who was involved with the adjusting and is believed to be an employee with Colonial, on December 18 and 24, 2014 whether any additional information was required from Plaintiff or First Atlantic. The response was Defendants were waiting on some technical data from a manufacturer and information would be provided to the contractors as soon as Wright Flood had it. Under the impression Defendants were processing payment, Plaintiff let its lien rights on the projects expire.

*Building 1*

30.     KD Consulting presented a January 14, 2015 report regarding claim number 14 0002206 relative to 155 Mytilene Dr., Building 1, Newport News, VA 23605. The report claimed that First Atlantic and Plaintiff did not adhere to ANSI/IICRC S500 Standard and Reference Guide for Professional Water Damage Restoration or FEMA Memorandum W-

13025a. The report was directed to Patrick Durtschi at Wright Flood from Carmelia at KD Consulting.

31.     In August 2015, Plaintiff presented a response to the KD Consulting report regarding Building 1 demonstrating with clear and convincing evidence why the KD Consulting report was inaccurate and baseless. KD Consulting and Wright Flood received the response and reviewed it.

32.     KD Consulting then presented an October 10, 2015 report to bolster its initial report and respond to Plaintiff's position. The report was directed to Nicholl at Wright Flood from Woodard at KD Consulting. It indicates that Plaintiff's "rebuttal report" was submitted to Wright Flood.

33.     Plaintiff has elected to accept the amount proposed by KD Consulting with respect to Building 1 despite the allegations Plaintiff performed its services incorrectly.

*Building 2*

34.     KD Consulting presented a January 12, 2015 report regarding claim number 14 0002207 relative to 155 Mytilene Dr., Building 2, Newport News, VA 23605. The report claimed that First Atlantic and Plaintiff did not adhere to ANSI/IICRC S500 Standard and Reference Guide for Professional Water Damage Restoration or FEMA Memorandum W-13025a. The report was directed to Patrick Durtschi at Wright Flood from Carmelia at KD Consulting.

35.     In August 2015, Plaintiff presented a response to the KD Consulting report regarding Building 2 demonstrating with clear and convincing evidence why the KD Consulting report was inaccurate and baseless. KD Consulting and Wright Flood received the response and reviewed it.

36.     KD Consulting then presented an October 10, 2015 report to bolster its initial report and respond to Plaintiff's position. The report was directed to Nicholl at Wright Flood from Woodard at KD Consulting. It indicates that Plaintiff's "rebuttal report" was submitted to Wright Flood.

37.     Plaintiff and First Atlantic are due $57,932.21 for services rendered to Building 2, but the Defendants continue to only offer $32,706.08.

*Building 3*

38.     KD Consulting presented a January 12, 2015 report regarding claim number 14 0002209 relative to 155 Mytilene Dr., Building 3, Newport News, VA 23605. The report claimed that First Atlantic and Plaintiff did not adhere to ANSI/IICRC S500 Standard and Reference Guide for Professional Water Damage Restoration or FEMA Memorandum W-13025a. The report was directed to Patrick Durtschi at Wright Flood from Carmelia at KD Consulting.

39.     In August 2015, Plaintiff presented a response to the KD Consulting report regarding Building 3 demonstrating with clear and convincing evidence why the KD Consulting report was inaccurate and baseless. KD Consulting and Wright Flood received the response and reviewed it.

40.     KD Consulting then presented an October 10, 2015 report to bolster its initial report and respond to Plaintiff's position. The report was directed to Nicholl at Wright Flood from Woodard at KD Consulting. It indicates that Plaintiff's "rebuttal report" was submitted to Wright Flood.

41.     Plaintiff and First Atlantic are due $57,932.21 for services rendered to Building 3, but the Defendants continue to only offer $32,706.08.

*Building 4*

42.     KD Consulting presented a January 12, 2015 report regarding claim number 14 0002210 relative to 155 Mytilene Dr., Building 4, Newport News, VA 23605.  The report claimed that First Atlantic and Plaintiff did not adhere to ANSI/IICRC S500 Standard and Reference Guide for Professional Water Damage Restoration or FEMA Memorandum W-13025a.  The report was directed to Patrick Durtschi at Wright Flood from Carmelia at KD Consulting.

43.     In August 2015, Plaintiff presented a response to the KD Consulting report regarding Building 4 demonstrating with clear and convincing evidence why the KD Consulting report was inaccurate and baseless.  KD Consulting and Wright Flood received the response and reviewed it.

44.     KD Consulting then presented an October 10, 2015 report to bolster its initial report and respond to Plaintiff's position.  The report was directed to Nicholl at Wright Flood from Woodard at KD Consulting.  It indicates that Plaintiff's "rebuttal report" was submitted to Wright Flood.

45.     Plaintiff and First Atlantic are due $66,352.32 for services rendered to Building 4, but the Defendants continue to only offer $32,706.08.

*Building 5*

46.     KD Consulting presented a January 13, 2015 report regarding claim number 14 0002211 relative to 155 Mytilene Dr., Building 5, Newport News, VA 23605.  The report claimed that First Atlantic and Plaintiff did not adhere to ANSI/IICRC S500 Standard and Reference Guide for Professional Water Damage Restoration or FEMA Memorandum W-

13025a. The report was directed to Patrick Durtschi at Wright Flood from Carmelia at KD Consulting.

47.     In August 2015, Plaintiff presented a response to the KD Consulting report regarding Building 5 demonstrating with clear and convincing evidence why the KD Consulting report was inaccurate and baseless. KD Consulting and Wright Flood received the response and reviewed it.

48.     KD Consulting then presented an October 10, 2015 report to bolster its initial report and respond to Plaintiff's position. The report was directed to Nicholl at Wright Flood from Woodard at KD Consulting. It indicates that Plaintiff's "rebuttal report" was submitted to Wright Flood.

49.     Plaintiff and First Atlantic are due $77,188.25 for services rendered to Building 5, but the Defendants continue to only offer $32,706.08.

*Building 6*

50.     KD Consulting presented a January 13, 2015 report regarding claim number 14 0002212 relative to 155 Mytilene Dr., Building 6, Newport News, VA 23605. The report claimed that First Atlantic and Plaintiff did not adhere to ANSI/IICRC S500 Standard and Reference Guide for Professional Water Damage Restoration or FEMA Memorandum W-13025a. The report was directed to Patrick Durtschi at Wright Flood from Carmelia at KD Consulting.

51.     In August 2015, Plaintiff presented a response to the KD Consulting report regarding Building 6 demonstrating with clear and convincing evidence why the KD Consulting report was inaccurate and baseless. KD Consulting and Wright Flood received the response and reviewed it.

52.     KD Consulting then presented an October 10, 2015 report to bolster its initial report and respond to Plaintiff's position. The report was directed to Nicholl at Wright Flood from Woodard at KD Consulting. It indicates that Plaintiff's "rebuttal report" was submitted to Wright Flood.

53.     Plaintiff and First Atlantic are due $102,917.66 for services rendered to Building 6, but the Defendants continue to only offer $43,608.10.

*Building 7*

54.     KD Consulting presented a January 13, 2015 report regarding claim number 14 0002213 relative to 155 Mytilene Dr., Building 7, Newport News, VA 23605. The report claimed that First Atlantic and Plaintiff did not adhere to ANSI/IICRC S500 Standard and Reference Guide for Professional Water Damage Restoration or FEMA Memorandum W-13025a. The report was directed to Patrick Durtschi at Wright Flood from Carmelia at KD Consulting.

55.     In August 2015, Plaintiff presented a response to the KD Consulting report regarding Building 7 demonstrating with clear and convincing evidence why the KD Consulting report was inaccurate and baseless. KD Consulting and Wright Flood received the response and reviewed it.

56.     KD Consulting then presented an October 10, 2015 report to bolster its initial report and respond to Plaintiff's position. The report was directed to Nicholl at Wright Flood from Woodard at KD Consulting. It indicates that Plaintiff's "rebuttal report" was submitted to Wright Flood.

57.     Plaintiff and First Atlantic are due $109,727.23 for services rendered to Building 7, but the Defendants continue to only offer $43,608.10.

*Building 8*

58.     KD Consulting presented a January 13, 2015 report regarding claim number 14

0002214 relative to 155 Mytilene Dr., Building 8, Newport News, VA 23605.  The report

claimed that First Atlantic and Plaintiff did not adhere to ANSI/IICRC S500 Standard and

Reference Guide for Professional Water Damage Restoration or FEMA Memorandum W-

13025a.  The report was directed to Patrick Durtschi at Wright Flood from Carmelia at KD

Consulting.

59.     In August 2015, Plaintiff presented a response to the KD Consulting report

regarding Building 8 demonstrating with clear and convincing evidence why the KD Consulting

report was inaccurate and baseless.  KD Consulting and Wright Flood received the response and

reviewed it.

60.     KD Consulting then presented an October 10, 2015 report to bolster its initial

report and respond to Plaintiff's position.  The report was directed to Nicholl at Wright Flood

from Woodard at KD Consulting.  It indicates that Plaintiff's "rebuttal report" was submitted to

Wright Flood.

61.     Plaintiff and First Atlantic are due $54,863.62 for services rendered to Building 8,

but the Defendants continue to only offer $21,804.04.

*Building 9*

62.     KD Consulting presented a January 13, 2015 report regarding claim number 14

0002215 relative to 155 Mytilene Dr., Building 9, Newport News, VA 23605.  The report

claimed that First Atlantic and Plaintiff did not adhere to ANSI/IICRC S500 Standard and

Reference Guide for Professional Water Damage Restoration or FEMA Memorandum W-

13025a. The report was directed to Patrick Durtschi at Wright Flood from Carmelia at KD Consulting.

63.     In August 2015, Plaintiff presented a response to the KD Consulting report regarding Building 9 demonstrating with clear and convincing evidence why the KD Consulting report was inaccurate and baseless. KD Consulting and Wright Flood received the response and reviewed it.

64.     KD Consulting then presented an October 10, 2015 report to bolster its initial report and respond to Plaintiff's position. The report was directed to Nicholl at Wright Flood from Woodard at KD Consulting. It indicates that Plaintiff's "rebuttal report" was submitted to Wright Flood.

65.     Plaintiff and First Atlantic are due $113,629.70 for services rendered to Building 9, but the Defendants continue to only offer $45,393.78.

*Building 10*

66.     KD Consulting presented a January 11, 2015 report regarding claim number 14 0002216 relative to 155 Mytilene Dr., Building 10, Newport News, VA 23605. The report claimed that First Atlantic and Plaintiff did not adhere to ANSI/IICRC S500 Standard and Reference Guide for Professional Water Damage Restoration or FEMA Memorandum W-13025a. The report was directed to Patrick Durtschi at Wright Flood from Carmelia at KD Consulting.

67.     In August 2015, Plaintiff presented a response to the KD Consulting report regarding Building 10 demonstrating with clear and convincing evidence why the KD Consulting report was inaccurate and baseless. KD Consulting and Wright Flood received the response and reviewed it.

68.     KD Consulting then presented an October 10, 2015 report to bolster its initial report and respond to Plaintiff's position. The report was directed to Nicholl at Wright Flood from Woodard at KD Consulting. It indicates that Plaintiff's "rebuttal report" was submitted to Wright Flood.

69.     Plaintiff and First Atlantic are due $86,197.90 for services rendered to Building 10, but the Defendants continue to only offer $34,491.76.

*Building 11*

70.     KD Consulting presented a January 12, 2015 report regarding claim number 14 0002217 relative to 155 Mytilene Dr., Building 11, Newport News, VA 23605. The report claimed that First Atlantic and Plaintiff did not adhere to ANSI/IICRC S500 Standard and Reference Guide for Professional Water Damage Restoration or FEMA Memorandum W-13025a. The report was directed to Patrick Durtschi at Wright Flood from Carmelia at KD Consulting.

71.     In August 2015, Plaintiff presented a response to the KD Consulting report regarding Building 11 demonstrating with clear and convincing evidence why the KD Consulting report was inaccurate and baseless. KD Consulting and Wright Flood received the response and reviewed it.

72.     KD Consulting then presented an October 10, 2015 report to bolster its initial report and respond to Plaintiff's position. The report was directed to Nicholl at Wright Flood from Woodard at KD Consulting. It indicates that Plaintiff's "rebuttal report" was submitted to Wright Flood.

73.     Plaintiff and First Atlantic are due $48,673.49 for services rendered to Building 11, but the Defendants continue to only offer $22,994.48.

*Building 12*

74.     KD Consulting presented a January 9, 2015 report regarding claim number 14 0002218 relative to 155 Mytilene Dr., Building 12, Newport News, VA 23605. The report claimed that First Atlantic and Plaintiff did not adhere to ANSI/IICRC S500 Standard and Reference Guide for Professional Water Damage Restoration or FEMA Memorandum W-13025a. The report was directed to Patrick Durtschi at Wright Flood from Carmelia at KD Consulting.

75.     In August 2015, Plaintiff presented a response to the KD Consulting report regarding Building 12 demonstrating with clear and convincing evidence why the KD Consulting report was inaccurate and baseless. KD Consulting and Wright Flood received the response and reviewed it.

76.     KD Consulting then presented an October 10, 2015 report to bolster its initial report and respond to Plaintiff's position. The report was directed to Nicholl at Wright Flood from Woodard at KD Consulting. It indicates that Plaintiff's "rebuttal report" was submitted to Wright Flood.

77.     Plaintiff and First Atlantic are due $51,006.00 for services rendered to Building 12, but the Defendants continue to only offer $22,994.48.

*Building 13*

78.     KD Consulting presented a January 13, 2015 report regarding claim number 14 0002219 relative to 155 Mytilene Dr., Building 13, Newport News, VA 23605. The report claimed that First Atlantic and Plaintiff did not adhere to ANSI/IICRC S500 Standard and Reference Guide for Professional Water Damage Restoration or FEMA Memorandum W-

13025a. The report was directed to Patrick Durtschi at Wright Flood from Carmelia at KD Consulting.

79.     In August 2015, Plaintiff presented a response to the KD Consulting report regarding Building 13 demonstrating with clear and convincing evidence why the KD Consulting report was inaccurate and baseless. KD Consulting and Wright Flood received the response and reviewed it.

80.     KD Consulting then presented an October 10, 2015 report to bolster its initial report and respond to Plaintiff's position. The report was directed to Nicholl at Wright Flood from Woodard at KD Consulting. It indicates that Plaintiff's "rebuttal report" was submitted to Wright Flood.

81.     Plaintiff and First Atlantic are due $51,006.00 for services rendered to Building 13, but the Defendants continue to only offer $22,994.48.

*Building 14*

82.     KD Consulting presented a January 9, 2015 report regarding claim number 14 0002220 relative to 155 Mytilene Dr., Building 14, Newport News, VA 23605. The report claimed that First Atlantic and Plaintiff did not adhere to ANSI/IICRC S500 Standard and Reference Guide for Professional Water Damage Restoration or FEMA Memorandum W-13025a. The report was directed to Patrick Durtschi at Wright Flood from Carmelia at KD Consulting.

83.     In August 2015, Plaintiff presented a response to the KD Consulting report regarding Building 14 demonstrating with clear and convincing evidence why the KD Consulting report was inaccurate and baseless. KD Consulting and Wright Flood received the response and reviewed it.

84.     KD Consulting then presented an October 10, 2015 report to bolster its initial report and respond to Plaintiff's position.  The report was directed to Nicholl at Wright Flood from Woodard at KD Consulting.  It indicates that Plaintiff's "rebuttal report" was submitted to Wright Flood.

85.     Plaintiff and First Atlantic are due $53,936.59 for services rendered to Building 14, but the Defendants continue to only offer $22,944.48.

*Building 15*

86.     KD Consulting presented a January 12, 2015 report regarding claim number 14 0002221 relative to 155 Mytilene Dr., Building 15, Newport News, VA 23605.  The report claimed that First Atlantic and Plaintiff did not adhere to ANSI/IICRC S500 Standard and Reference Guide for Professional Water Damage Restoration or FEMA Memorandum W-13025a.  The report was directed to Patrick Durtschi at Wright Flood from Carmelia at KD Consulting.

87.     In August 2015, Plaintiff presented a response to the KD Consulting report regarding Building 15 demonstrating with clear and convincing evidence why the KD Consulting report was inaccurate and baseless.  KD Consulting and Wright Flood received the response and reviewed it.

88.     KD Consulting then presented an October 10, 2015 report to bolster its initial report and respond to Plaintiff's position.  The report was directed to Nicholl at Wright Flood from Woodard at KD Consulting.  It indicates that Plaintiff's "rebuttal report" was submitted to Wright Flood.

89.     Plaintiff and First Atlantic are due $83,506.54 for services rendered to Building 15, but the Defendants continue to only offer $34,491.76.

*Building 16*

90.    KD Consulting presented a January 11, 2015 report regarding claim number 14 0002222 relative to 155 Mytilene Dr., Building 16, Newport News, VA 23605. The report claimed that First Atlantic and Plaintiff did not adhere to ANSI/IICRC S500 Standard and Reference Guide for Professional Water Damage Restoration or FEMA Memorandum W-13025a. The report was directed to Patrick Durtschi at Wright Flood from Carmelia at KD Consulting.

91.    In August 2015, Plaintiff presented a response to the KD Consulting report regarding Building 16 demonstrating with clear and convincing evidence why the KD Consulting report was inaccurate and baseless. KD Consulting and Wright Flood received the response and reviewed it.

92.    KD Consulting then presented an October 10, 2015 report to bolster its initial report and respond to Plaintiff's position. The report was directed to Nicholl at Wright Flood from Woodard at KD Consulting. It indicates that Plaintiff's "rebuttal report" was submitted to Wright Flood.

93.    Plaintiff and First Atlantic are due $55,671.02 for services rendered to Building 16, but the Defendants continue to only offer $22,994.48.

*Building 17*

94.    KD Consulting presented a January 12, 2015 report regarding claim number 14 0002223 relative to 155 Mytilene Dr., Building 17, Newport News, VA 23605. The report claimed that First Atlantic and Plaintiff did not adhere to ANSI/IICRC S500 Standard and Reference Guide for Professional Water Damage Restoration or FEMA Memorandum W-

13025a.  The report was directed to Patrick Durtschi at Wright Flood from Carmelia at KD Consulting.

95.     In August 2015, Plaintiff presented a response to the KD Consulting report regarding Building 17 demonstrating with clear and convincing evidence why the KD Consulting report was inaccurate and baseless.  KD Consulting and Wright Flood received the response and reviewed it.

96.     KD Consulting then presented an October 10, 2015 report to bolster its initial report and respond to Plaintiff's position.  The report was directed to Nicholl at Wright Flood from Woodard at KD Consulting.  It indicates that Plaintiff's "rebuttal report" was submitted to Wright Flood.

97.     Plaintiff and First Atlantic are due $83,506.54 for services rendered to Building 17, but the Defendants continue to only offer $34,491.76.

*Building 18*

98.     KD Consulting presented a January 15, 2015 report regarding claim number 14 0002224 relative to 155 Mytilene Dr., Building 18, Newport News, VA 23605.  The report claimed that First Atlantic and Plaintiff did not adhere to ANSI/IICRC S500 Standard and Reference Guide for Professional Water Damage Restoration or FEMA Memorandum W-13025a.  The report was directed to Patrick Durtschi at Wright Flood from Carmelia at KD Consulting.

99.     In August 2015, Plaintiff presented a response to the KD Consulting report regarding Building 18 demonstrating with clear and convincing evidence why the KD Consulting report was inaccurate and baseless.  KD Consulting and Wright Flood received the response and reviewed it.

100.   KD Consulting then presented an October 10, 2015 report to bolster its initial report and respond to Plaintiff's position. The report was directed to Nicholl at Wright Flood from Woodard at KD Consulting. It indicates that Plaintiff's "rebuttal report" was submitted to Wright Flood.

101.   Plaintiff and First Atlantic are due $53,004.46 for services rendered to Building 18, but the Defendants continue to only offer $34,491.76.

*Facts Related to All 18 Claims*

102.   The initial KD Consulting reports were forwarded by email by Patrick Durtschi in Lexington, Kentucky to Diana Garcia in Denver, Colorado, who is the Property Claims Manager for AIMCO, which is the parent company of City Line. Patrick Durtschi's emails indicate he is employed by or an agent of Colonial. Diana Garcia forwarded the reports by email to John Coker in Virginia, AIMCO's Director of Construction. In early February 2015, Coker forwarded them by email to Chip Dawley and Chad Young at First Atlantic in Virginia. Chip Dawley and Chad Young promptly forwarded them to Matthew Slay at Plaintiff, in Illinois.

103.   The October 10, 2015 KD Consulting report was emailed by Nicholl to City Line's insurance broker. It indicates the KD Consulting reports were prepared by Carmelia, Kaiser, Woodard and Rachel Adams. When presenting the report, Nicholl touted the qualifications of some of the reports' authors, including Rachel Adams. Specifically, that she "...is a IICRC board member and environmental professional expert who assisted Sam in the writing of the rebuttal report. Rachel was instrumental in the development of the IICRC standards."

104.   The Defendants reports were outcome driven to ensure the full value of the work performed was never paid to City Line, First Atlantic or Plaintiff. The Defendants reports are

22

not just wrong – they are false and Defendants knew they were false. In order to give the reports

some credence and sell them to City Line, First Atlantic and Plaintiff, Nicholl pitched Rachel

Adams as an author. In fact, she was not an author, did not consult on the 18 different claims,

disagreed with the Defendants reports and agreed with Plaintiff's reports. Her letter in that

regard is **Exhibit A**.

105.    Despite the original reports being completely inaccurate, false and outcome

oriented, if Defendants did not directly participate in their generation, then they willfully ignored

those facts, even after Plaintiff made known the final report had a "ghost author," all because the

result – lower payments – was desired by Wright Flood. To contradict Wright Flood would

jeopardize continued and future business and revenue.

106.    The Defendants are engaged in an ongoing scheme concocting false reports to

deny policy benefits to insureds and payments to contractors under the NFIP.

107.    Wright Flood and Colonial knew or were willfully blind to the fact that the

Consultants, Woodard, Carmelia and Kaiser were generating fraudulent reports to deny

legitimate claims.

108.    Wright Flood and Colonial's failure to investigate facially inaccurate reports after

having seen Plaintiff's responses constitutes reckless disregard and "willful blindness" to the

illegal and fraudulent actions of the Consultants, Woodard, Carmelia and Kaiser; therefore,

Wright Flood and Colonial are liable under the doctrine of conscious avoidance.

109.    Wright Flood stands to benefit from this fraudulent scheme both directly and

indirectly. Based on information and belief, due to the way in which the WYO program is funded

by FEMA, Wright Flood actually reaps greater profit by driving up claims handling expenses

and denying legitimate claims. Further, Wright Flood avoids the threat of a government audit by reducing the amount paid on claims, even if legitimate.

110.    Colonial and the Consultants also stand to benefit from this fraudulent scheme. The more Colonial and the Consultants contribute to Wright Flood's inflated expenses, the easier it is for them to ensure future assignments and expense payments from Wright Flood.

*The Enterprise*

111.    The Defendants constitute a group of individuals and entities associated in the scheme to pay less for flood remediation work.

112.    The Defendants are an ongoing organization which engages in, and whose activities affect, interstate commerce. The Defendants function as a continuing unit and share the common purpose of creating illegitimate reports to be used to fraudulently deny and adjust, in whole or in part, insurance claims for their individual and collective economic gain.

113.    The Defendants common goal was to reduce payments on legitimate insurance claims, drive up costs of claims handling and investigation of these claims. This generated profits for the enterprise as a whole and for participating individuals.

114.    Upon information and belief, Colonial and the Consultants submitted billing invoices to Wright Flood for actual work performed in generating the fraudulent reports and perpetuating the fraud. Upon information and belief, those invoices were paid by Wright Flood from federal funds. Based on information and belief, these invoices and the remittance of funds in satisfaction, were transmitted through U.S. mail and/or wire transfers. These invoices, the resulting payments, proofs of claims to be signed by the insured, and the KD Consulting reports were fraudulent and use of U.S. mail and wire transfers to transmit them is a violation of 18 U.S.C. § 1341 and §1343.

115.    The Defendants falsified reports in order that they can deny or underpay valid insurance claims, so they can charge unnecessary and/or inflated adjusting costs, and so that Wright Flood can avoid being audited by FEMA and can avoid reimbursing FEMA for an overpayment of a claim.

116.    The Defendants, each of them, have a structure and purpose separate and apart from the pattern of racketeering activity.

117.    For the purpose of executing and/or attempting to execute their scheme to defraud or obtain money by means of false pretenses, representations, or promises, the Defendants in violation of 18 U.S.C. §1341, placed in post offices and/or in authorized repositories matter and things to be sent or delivered by the Postal Service, caused matter and things to be delivered by commercial interstate carrier, and received matter and things from the Postal Service or commercial interstate carriers, including but not limited to contracts, invoices, correspondence, payments, and fraudulent reports.

118.    For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations or promises, the Defendants in violation of 18 U.S.C. §1343, transmitted and received by wire matter and things which include but are not limited to contracts, invoices, correspondence, payments, and fraudulent reports.

119.    The Defendants misrepresentations, acts of concealment, and failures to disclose were either knowing and intentional, or in reckless disregard of facts, and made for the purpose of deceiving Plaintiff and for the purpose of denying claims and pay Plaintiff less. The Defendants' deceptions were material.

120.    Plaintiff has been injured in its business or property by Defendants' overt acts of mail and wire fraud. Plaintiff's legitimate claim for payment of work was denied based on fraudulent reports which directly reduced the amount to be paid to Plaintiff.

121.    The Defendants have engaged in a "pattern of racketeering activity," as defined by 18 U.S.C. § 1961(5), by committing or aiding and abetting in the commission of at least two acts of racketeering activity, i.e., indictable violations of 18 U.S.C. §§1341 and 1343 as described above, within the past ten years. In fact, Defendants have committed multiple acts of racketeering activity. Plaintiff's application for payment on the 17 different claims was fraudulently denied in whole or in part on different dates, each claim and each denial proving separate and definable predicate acts of racketeering activity. Each act of racketeering activity was related, had a similar purpose, involved the same or similar participants and method of commission, had similar results, and impacted similar victims, including Plaintiff.

122.    The multiple acts of racketeering activity which Defendants committed and/or conspired to commit, or aided and abetted acts, were related to each other and amount to and pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

COUNT I
(VIOLATION OF 18 U.S.C. § 1962(c))

123.    Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

124.    This claim for relief arises under 18 U.S.C. §1962(c).

125.    As set forth above, Defendants have violated 18 U.S.C. §1962(c) by conducting or participating, directly or indirectly, their affairs through a pattern of racketeering.

126.   As a direct and proximate result, Plaintiff has been injured in its business or property by the predicate acts which make up the Defendants' patterns of racketeering activity.

127.   Specifically, Plaintiff has been injured in its business or property by having their legitimate claims for work to be paid from NFIP proceeds but the claims are being denied in whole or in part as a result of the scheme employed by the Defendants.

DAMAGES

128.   Plaintiff has been denied payment resulting in a loss exceeding $900,000.  Under 18 U.S.C. §§ 1964(c), Plaintiff is entitled to treble damages, costs, attorney's fees, and prejudgment interest.

JURY DEMAND

129.   Plaintiff hereby requests a trial by jury as to all issues so triable.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment in its favor against Defendants, jointly and severally, as follows:

a.   Declaring that Defendants have violated Section 1962(c) of RICO;

b.   Ordering Defendants to pay treble the amount of damages suffered by Plaintiff as a result of Defendants' violations of Section 1962(c) of RICO;

c.   Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees and the reimbursement of expenses in amounts to be determined by the Court;

d.   Awarding prejudgment interest and post-judgment interest until the judgment is satisfied in full; and

e.   Granting such other relief as this Court deems to be just and proper.

Respectfully submitted,

_____

By:      John S. Wilson

John S. Wilson (VSB No. 28775)
jwilson@wmlawgroup.com
Wilson & McIntyre, PLLC
500 East Main Street, Suite 920
Norfolk, Virginia 23510
Telephone: (757) 961-3900
Facsimile: (757) 961-3966
*Counsel for Plaintiff*

and

James D. Johnson (pro hac app. pending)
Indiana Attorney Number 11984-49
jdjohnson@jacksonkelly.com
Joseph H. Langerak IV (pro hac app. pending)
Indiana Attorney Number 25668-82
jhlangerak@jacksonkelly.com
Jackson Kelly, PLLC
221 N. W. 5th Street
P. O. Box 1507
Evansville, Indiana  47706-1507
Telephone: (812) 422-9444
Facsimile:  (812) 421-7459