IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

SLAY'S RESTORATION, LLC,

    Plaintiff,

v.                                              CIVIL ACTION NO. 4:15cv140

WRIGHT NATIONAL FLOOD INSURANCE COMPANY,
COLONIAL CLAIMS CORPORATION,
KLSM CONSULTING GROUP, INC.
    D/B/A KD CONSULTING & APPRAISAL GROUP
JEFFREY P. KAISER,
CIS GROUP LLC,
SAMUEL WOODARD,
JEFFREY NICHOLL,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motions to Dismiss. All Defendants have moved to dismiss Plaintiff's Complaint on the basis that it fails to state a claim for which relief can be granted. All submitted briefs have been reviewed, and the Court held a hearing on November 30, 2016. For the reasons stated below, Defendants' 12(b)(6) Motions to Dismiss (ECF Nos. 24, 26, 28, 59 and 63) are **GRANTED**.

### I.   FACTS & PROCEDURAL HISTORY

On September 9, 2014, Newport News, Virginia experienced excessive rainfall that resulted in stream flooding. Compl. ¶ 23. City Line Associates, LPs ("City Line"), owned 200 apartment units that were "hard hit" by the flooding, and "most" residents were forced to evacuate. *Id.* To repair the damage, City Line contracted with First Atlantic Restoration, Inc. ("First Atlantic") to perform emergency services to its Newport News, Virginia property. *Id.* ¶

1

16. Thereafter, First Atlantic subcontracted with Plaintiff Slay's Restoration, LLC ("Plaintiff") to "dry" City Line's flooded properties once the flood waters receded. *Id.*

City Line is the named insured under eighteen Standard Flood Insurance Policies ("SFIP") issue by Wright National Flood Insurance Company ("Wright National") in its capacity as a Write Your Own (WYO) Program carrier. ECF No. 60. City Line made 18 claims with Wright National regarding the eighteen buildings that were impacted by flooding. *Id.* ¶ 24. In response to the claims, Wright National dispatched Colonial Claims Corporation ("Colonial"), an adjusting firm, *Id.* ¶ 8., to inspect City Line's property and document the claims. *Id.* ¶ 24.

Plaintiff performed all drying services and provided all materials because First Atlantic subcontracted the entire scope of the work to Plaintiff. *Id.* ¶ 26. During the repairs, City Line, First Atlantic, and Plaintiff took great care to document the 18 claims, because City Line had prior experiences with Wright National, where Wright National "substantially" reduced the amount paid to City Line for flood restorations even after Plaintiff and First Atlantic objected. *Id.* ¶ 25. Because Plaintiff conducted all of the drying services, Plaintiff was in direct contact with Colonial and the consultants regarding the claim adjustment. *Id.* ¶ 26.

After Plaintiff and First Atlantic dried 18 of City Line's buildings, Plaintiff and First Atlantic submitted "materials" to City Line for submission to Defendants regarding 18 claims. *Id.* ¶ 28. The materials requested an excess of $1.2 million in payment for First Atlantic and Plaintiff's work on the 18 claims. *Id.* ¶ 28. After City Line submitted the necessary materials to Defendants for payment, First Atlantic contacted Patrick Durtschi, who was involved with the adjusting and is believed to have been an employee with Colonial on December 18 and 24, 2014, to determine whether additional information was required from Plaintiff or First Atlantic. *Id.* ¶ 29. Patrick Durtschi informed First Atlantic that ". . . Defendants were waiting on some

technical data from a manufacturer and information would be provided to the contractors as soon as Wright [National] had it." *Id.* "Under the impression Defendants were processing payment, Plaintiff allowed its lien rights on the projects expire." *Id.*

Out of 18 claims, plaintiff elected to accept the amount proposed by KD Consulting with respect to building 1 despite the allegations that Plaintiff performed its services incorrectly. *Id.* at 33. For Plaintiff's seventeen objected claims, however, Plaintiff, First Atlantic and/or City Line received some iteration of the following response from KD Consulting and/or Nicholl, between January 9, 2015 and October 10, 2015: (1) that First Atlantic and Plaintiff did not adhere to ANSI/IICRC S500 Standard and Reference Guide for Professional Water Damage Restoration or FEMA Memorandum W- 13025; (2) KD Consulting and Nicholl's (*see* Compl. ¶ 22) reply report to Plaintiff's objection bolstering its initial report, and a statement that Plaintiffs "rebuttal report" was submitted to Wright National; and subsequent claim payment reductions varying between $18,512.70 and $68,235.92. *Id.* ¶ 34-103.

In KD Consulting's October 10, 2015 response to Plaintiff's objections, KD Consulting stated that Rachel Adams ". . . is a IICRC board member and environmental professional expert who assisted Sam in the writing of the rebuttal report. Rachel was instrumental in the development of the IICRC standards." *Id.* ¶ 103. Rachel Adams stated, however, that she "did not author, help author, or give [her] opinion to any statements written in the Report or the Reply. In fact, she does' not recall seeing them until October 29, 2015." Compl. Ex. A.

As a result of the foregoing, Plaintiff filed a one-count Complaint in this Court on December 22, 2015 against eight Defendants. Compl. ¶¶ 123-27. Count One alleged that Defendants "violated 18 U.S.C. §1962(c) by conducting or participating, directly or indirectly, their affairs through a pattern of racketeering." *Id.* at 125. Plaintiff asserted that it has been

3

injured in its business or property as a direct and proximate result of Defendants' predicate acts, which makeup the Defendants' patterns of racketeering activity. *Id.* ¶ 126. "Specifically, Plaintiff has been injured in its business or property by having their legitimate claims for work to be paid from [National Flood Insurance Program ("NFIP")] proceeds but the claims are being denied in whole or in part as a result of the scheme employed by the Defendants." *Id.* ¶ 127.

For contextual purposes, Defendant KLSM Consulting Group, doing business as KD Consulting & Appraisal Group ("KLSM") is a Florida consulting and appraisal firm. *Id.* ¶ 6. Defendant CIS Specialty Claims Services Group LLC ("CIS") is a Texas adjusting and consulting firm. *Id.* ¶ 7. Defendant Colonial Claims Corporation ("Colonial") is a Florida adjusting firm. *Id.* ¶ 8. Defendant Wright National is a Florida insurance company carrying Write Your Own ("WYO") insurance policies as a participant in the National Flood Insurance Program ("NFIP"). *Id.* ¶ 9. Defendant Samuel Woodard ("Woodard") is a natural person residing in Texas and employed as a mitigation reviewer by "either KLSM or CIS." *Id.* ¶ 10. Defendant Jeffrey Nicholl ("Nicholl") is a natural person residing in Florida and employed by Wright Flood. *Id.* ¶ 11. Defendant Michael Carmelia ("Carmelia") is a natural person residing in Florida and employed as a loss consultant by KSLM Consulting. *Id.* ¶ 12. Defendant Jeffrey P. Kaiser ("Kaiser") is a natural person residing in Florida and was employed as a mitigation professional by KLSM. *Id.* ¶ 13.

On February 8, 2016, Colonial filed a Motion to Dismiss for failure to state a claim upon which relief can be granted, ECF No. 24, as did CIS and Woodard, ECF No. 26, and Wright National, ECF No. 28. On February 26, 2016, Plaintiff filed Memorandums in Opposition to the aforementioned Motions to Dismiss. ECF Nos. 40, 41, 42. On March 7, Colonial filed a Reply to Plaintiff's Opposition, ECF No. 56, as did Wright National, ECF No. 57. On March 16, 2016,

Plaintiff requested a hearing on the pending Motions to Dismiss. ECF No. 58.

On March 24, 2016, Nicholl filed a Motion to Dismiss for failure to state a claim upon which relief can be granted. ECF No. 59. On April 6, 2016, Plaintiff filed a Memorandum in Opposition to Nicholl's Motions to Dismiss. ECF No. 61. On April 11, 2016, KLSM and Kaiser filed a joint Motion to Dismiss for failure to state a claim upon which relief can be granted. ECF No. 63. On April 12, 2016, Plaintiff filed an Opposition Memorandum to KLSM and Kaiser's Motion to Dismiss. ECF No. 66. On May 2, 2016, KLSM and Kaiser filed a reply to Plaintiff's Memorandum in Opposition. ECF No. 67. Between May 3, 2016, and May 11, 2016, Colonial, ECF No. 69, Wright National, ECF No. 72, and CIS, Woodard, KLSM and Kaiser, ECF No. 75, filed a Motion for Leave to Supplement the Record with new case law authority in support of their Motion to Dismiss. On May 16, 2016, Plaintiff filed a response to Defendant Wright National's Motion for Leave to Supplement the Record. ECF No. 77. On August 10, 2016, the Court Granted Defendant's Motion for Leave to Supplement the Record. ECF No. 78. On November 30, 2016, the Court held a Motion Hearing regarding Defendants' Motions to Dismiss. ECF No. 79.

## II. LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted is a challenge to the legal sufficiency of a complaint, as governed by Rule 8." *Fed. Trade Comm'n v. Innovative Mktg, Inc.*, 654 F. Supp. 2d 378, 384 (D. Md. 2009). The Supreme Court has recently held that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 129 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 (2007)).

The Supreme Court noted that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and noted that "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. See also Harman v. Unisys Corp.*, 356 Fed. App'x. 638, 640–41 (4th Cir. 2009). The Court added that "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions" and that, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The Court further noted that "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

Allegations of fraud pled as the basis of a Racketeer Influenced and Corrupt Organizations ("RICO") Act claim must meet the heightened pleading requirements set forth in Rule 9(b) of the Federal Rules of Civil Procedure. *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) (citing *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1400–01 (9th Cir. 1986) ("plaintiff must plead 'circumstances of the fraudulent acts that form the alleged pattern of racketeering activity with sufficient specificity pursuant to Fed. R. Civ. P. 9(b)'")). Rule 9(b) states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

### III. DISCUSSION

Plaintiff alleges that Defendants violated 18 U.S.C. §1962(c) by, directly or indirectly, conducting or participating in a pattern of racketeering. Compl. ¶ 125. Specifically, Plaintiff argues that it has been injured in its business or property by Defendants' using overt acts of mail

and wire fraud to deny their legitimate claims for work to be paid from NFIP proceeds. Compl. ¶¶ 120 and 127. The question before the Court is, *inter alia*, whether Plaintiff has standing under RICO to pursue this claim, and whether the National Flood Insurance Act ("NFIA") preempts Plaintiffs from pursuing this suit. The Court **FINDS** that Plaintiff lacks standing and is preempted from pursuing this claim in light of the NFIA. Accordingly, the Court **DECLINES** to consider the merits of Plaintiff's RICO allegation.

### a. Standing

The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has found that the language in 18 U.S.C. § 1964(c) "creates certain 'standing' requirements before one can attempt to state a claim under 18 U.S.C. § 1962." *Choimbol v. Fairfield Resorts, Inc.*, 428 F. Supp. 2d 437, 444 (E.D. Va. 2006) (citing *Brandenburg v. Seidel*, 859 F.2d 1179, 1188 n.10 (4th Cir. 1988)). The Supreme Court has noted that "[a] plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).

Moreover, a plaintiff must show that defendants' violation not only was a "but for" cause of his injury, but was the proximate cause as well. *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992).[1] Proximate cause is a necessary element of analysis to "limit a person's responsibility for the consequences of that person's own act." *Ibid.* Proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (citing *Holmes*, 503 U.S. at 271); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (the "central question" regarding proximate cause is "whether the alleged violation led *directly* to the plaintiff's injuries.") (emphasis added).

---

[1] Plaintiff argues that *Holmes* does not apply in this case. The Court disagrees and finds that the analysis in *Holmes* is applicable in this case.

"Thus a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's act was generally said to stand at too remote a distance to recover." *Holmes*, 503 U.S. at 268-69; *see also Mid Atlantic Telecom, Inc. v. Long Distance Serv., Inc.*, 18 F.3d 260, 263 (4th Cir. 1994) (stating that the RICO action could not lie where "[t]he causal connection was considered too tenuous, and the plaintiffs' theory ignored the more immediate causes of their injuries . . . Where the injuries were more appropriately attributable to intervening causes that were not predicate acts under RICO. . .") (citing *Brandenburg*, 859 F.2d at 1190); *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) ("As the Seventh Circuit has stated, '[a] defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct. . .' " (citing *Haroco, Inc. v. Am. Nat'l Bank & Tr. Co. of Chicago*, 747 F.2d 384, 398 (1984), aff'd, 473 U.S. 606 (1985)).

Defendants argue that Plaintiff lacks standing to bring this RICO claim because Plaintiff cannot show that Defendants are the proximate cause of its injury. ECF Nos. 25, 27, 29, 60, and 64. Specifically, Defendants argue that they are not the proximate cause of Plaintiff's injury because the Parties never had a contractual relationship that required Defendants to disburse any of the NFIP proceeds to Plaintiff. Most poignantly, Wright National asserts, "assuming *arguendo* that Wright National used or relied upon an 'inaccurate' or 'sham' report prepared by KD Consulting to reduce the amount of money otherwise payable to City Line under the [Standard Flood Insurance Policy ("SFIP")], the direct victim of such conduct was City Line, not [Plaintiff]." ECF No. 29.

In response, Plaintiff argues that a contractual relationship is not necessary to pursue a RICO claim, and that it only has to plead "some direct relation between the injury asserted and injurious conduct alleged" to satisfy RICO's proximate cause requirement. ECF Nos. 40, 41, 42,

8

and 61. Plaintiff further asserts that"[w]hen mail fraud is the predicate act, the complainant's injury must occur 'by reason of' the scheme to defraud.' ". *Id.* To that end, Plaintiff avers that its Complaint sufficiently alleges that the mail and wire fraud committed by Defendants proximately caused its injury—namely, recovering less money than they were entitled to for their work performed. *Id. See also* Complaint ¶ 120.

While RICO does not explicitly state that Plaintiff must have a contractual relationship in order to file suit, RICO does require, as the court noted in *Holmes*, that Plaintiff must show that Defendants *proximately* caused Plaintiff's injury. 503 U.S. at 271-75. On these facts, Plaintiff cannot show that Defendants proximately caused its injury because it is only tangentially connected to Defendants. Stated more specifically, because Plaintiff is a subcontractor of First Atlantic, who is a contractor of City Line, who has an insurance policy with Wright National, who employed the remaining Defendants in this suit, on these facts, any financial injury Plaintiff has endured was *proximately* caused by First Atlantic—the party who hired Plaintiff to dry 18 of City Line's buildings. *See* Compl. ¶¶ 16 and 28. Plaintiff even references the disputed claims as "City Line Associates, LP's ("City Line") claims." *Id.* at 16.

Although the Court understands that Plaintiff argues that the impetus for First Atlantic and City Line's inability to pay Plaintiff for the work performed was Defendants alleged fraudulent denial of City Line's claims, this does not negate the fact that First Atlantic is still the party who has directly harmed Plaintiff. As Plaintiff admits in the Complaint, Plaintiff and First Atlantic submitted all "materials" to City Line, and City Line, in turn, submitted those reports to Defendants for review. Compl. ¶ 28. If Plaintiff, First Atlantic, and City Line thought Defendants were engaged in fraudulent behavior that subsequently resulted in the denial of City Line's claim, City Line, not Plaintiff, should be pursuing this suit against Defendants. Further, the Court

finds it unusual that the Plaintiff has not sought relief from First Atlantic with whom it contracted.

Without more information, the Court is unable to infer that Plaintiff has standing. *See Gallagher v. Canon U.S.A., Inc.*, 588 F. Supp. 108, 110 (N.D. Ill. Jul. 24, 1984) (holding, "Where however Canon seeks RICO standing simply as a shareholder of an injured corporation, it stretches RICO far beyond standing notions employed for any other type of action. Accordingly, the Amended Counterclaim does not survive unless it can be recast to allege only wrongs by which Canon was injured in its own right, not just through the value of its Ambassador stock.") (N.D. Ill. 1984) (citing "*Bennett v. Berg,* 685 F.2d 1053, 1058 (8th Cir.1982)). Accordingly, the Court finds Plaintiff lacks standing under RICO to pursue this claim.

### b. Preemption

Defendants, in addition to asserting Plaintiff lacks standing, argued that Plaintiff is foreclosed from pursuing this suit because the claim falls under the Standard Flood Insurance Policy. In response, Plaintiff argues that such a finding would be unjust because the SFIP does not provide for any remedy for non-policy holders. The Court disagrees and finds that Plaintiff's claim is preempted because City Line is not foreclosed from pursuing a claim under FEMA. Moreover, Plaintiff admits in the Complaint that NFIP proceeds are at the core of its suit. Compl. ¶ 127. As a result, the National Flood Insurance Act governs. *See* 44 C.F.R. pt. 61, App. (A)(2), art. IX; *see also Melanson v. United States Forensic, LLC*, 2016 WL 1729493 (E.D.N.Y. April 30, 2016).

As a matter of background, the NFIA was enacted with a legislative "recogni[tion] that 'many factors have made it uneconomic for the private insurance industry alone to make flood

insurance available to those in need of such protection on reasonable terms and conditions,' " *Melanson v. United States Forensic,* LLC, 2016 WL 1729493, at *1 (E.D.N.Y. April 30, 2016) (citing *Jacobson v. Metro. Prop. & Cas. Ins. Co.*, 672 F.3d 171, 174 (2d Cir. 2012) (quoting 42 U.S.C. § 4001(b)). Thus, under the Act, " 'the federal government provides flood insurance subsidies and local officials are required to adopt and enforce various management measures.' " *Id.* (citation omitted).

Under the NFIA's umbrella, the National Flood Insurance Program ("NFIP"), administered by the Federal Emergency Management Agency ("FEMA"), is "supported by taxpayer funds, which pay for claims that exceed the premiums collected from the insured parties." *Id.* (citing *Jacobson*, 672 F.3d at 174 (citing *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 165 n. 2 (3d Cir.1998)). This means, "[t]he NFIP is a federally-subsidized program designed to make flood insurance available to the general public at or below actuarial rates." *Id.* (citing *Moffett v. Computer Sci. Corp.*, 457 F. Supp. 2d 571, 573 (D. Md.2006)).

Pursuant to the NFIP, "FEMA is authorized to promulgate regulations as to 'the general terms and conditions of insurability which shall be applicable to properties eligible for flood insurance coverage,' and as to 'the general method or methods by which proved and approved claims for losses under such policies may be adjusted and paid.' " *Id.* (citing *Battle v. Seibels Bruce Ins.* Co., 288 F.3d 596, 599 (4th Cir.2002)). "In other words, FEMA writes the policies and makes the rules as to claims made under them." *Id.* (citation omitted).

"In 1983, FEMA created the Write Your Own ["WYO"] program, which allows private insurance companies to issue and administer SFIPs in their own names as 'fiscal agent[s] of the Federal Government.' " *Id.* at 2 (citing *Ravasio v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 81 F. Supp.3d 274, 277 (E.D.N.Y. 2015) (quoting 42 U.S.C. § 4071(a)(1)). Under this expansion,

private insurance companies are authorized to "write their own" federally-underwritten SFIPs, *Van Holt*, 163 F.3d at 165, but in doing so, assume "significant administrative responsibilities under the NFIP," *Id.* (citation omitted).

Relevant here, the NFIA contains a remedial provision, which creates a right of action for insureds against the Federal Insurance Administrator, to be brought in federal court within one year after the cause of action accrues:

> [U]pon the disallowance by the Administrator of any such claim [for losses covered by an SFIP], or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance by the Administrator, may institute an action against the Administrator on such claim in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy.

42 U.S.C. § 4072. With this statutory framework in mind, the Court now turns to the legal analysis.

The Court is persuaded that the Plaintiff's RICO claim is precluded by the provisions of the National Flood Insurance Program, which provides the exclusive remedy for all claims arising from a WYO carrier's handling of claims under an SFIP. *See Melanson*, WL 1729493 *at 12.

Based on the comprehensive and detailed regulatory system Congress established to govern claims arising out of the NFIA, numerous courts have held that claims other than those expressly authorized by the NFIA are preempted. *See, e.g., Wright v. Allstate Ins. Co.*, 415 F.3d 384, 390 (5th Cir. 2005) (holding that "state law tort claims arising from claims handling by a WYO are preempted by federal law"); *C.E.R.1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263, 272 (3rd Cir. 2004) ("We address in this appeal whether the National Flood Insurance Program (omitted) is sufficiently comprehensive to preempt a state tort suit arising from conduct related to

the Program's administration. We conclude that the overarching purpose of the NFIP–to provide affordable flood insurance in high-risk areas in order to reduce pressures on the federal fisc–would be compromised by state court interference. Thus the plaintiff's state law tort claims are preempted."); *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 949-50 (6th Cir. 2002).

To date, every circuit that has considered this question of preemption, with regard to the NFIP, has found for the Defendants. *Melanson,* at 12. Although the leading cases only address the preemptive effect of the NFIP on overlapping claims based on state and federal common law theories, the Court discerns no principled basis for refusing to extend those holdings and their underlying rationale to the facts of this case. Several relevant factors highlighted in the case law support this conclusion. *Id.*

First, it would be patently inconsistent with the federal government's overarching goal of promoting uniformity to disallow a wide range of tort and federal common law claims arising out of claims handling activities by WYO carriers, only to permit a civil RICO claim to proceed on the same underlying facts. *Id.* at 13. Second, courts have repeatedly emphasized the harmful effect that duplicative flood loss claims would have on the public fisc. *Id.*

Third, courts that have considered this issue have consistently implied that the preemptive effect of the NFIP is not limited to state law claims. *Id.* In fact, "nowhere in the NFIA or the SFIP does Congress explicitly reference any right of a policyholder to bring extra-contractual claims against a WYO insurer" and the reference to federal common law in Article IX "does not confer on policyholders the right to assert extra-contractual claims against WYO insurers—which claims, if successful, would likely be paid with government funds." *Id.* at 394.

Fourth, and most importantly, civil RICO claims are precluded where the challenged conduct is already covered by a more comprehensive and specialized federal statute. *Melanson,*

13

at 14; *see Palmer v. Trump Model Mgmt, LLC*, ——175 F. Supp. 3d 103, n. 14 (S.D.N.Y. 2016) (observing that courts in the Second Circuit "routinely preclude[ ] RICO claims where the alleged conduct is already covered by a more detailed federal statute").

Although Plaintiff argues that its claim is properly filed under RICO, in lieu of independent flood insurance law, ECF No. 41, there is no question that the crux of Plaintiff's complaint is that Wright National did not pay all amounts owed under the SFIPs issued to City Line. Therefore, Plaintiff's RICO claim – predicated on Wright National's handling of City Line's flood loss claim and Defendant's alleged failure to pay all amounts owed under the SFIP for mitigation work performed by Plaintiff – is a dispute arising from the handling of the subject flood loss claims.

If additional sums are owed under the SFIP, the precisely drawn and detailed statutory and regulatory system in place under the NFIA and the SFIP provides the exclusive remedy. 44 C.F.R. Part 61, Appendix (A)(1) at Art. IX (underscore supplied) (". . . all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended, and Federal common law."); *see also* 44 C.F.R. § 61.13(a) (incorporating Appendix "A" into the SFIP); *Melanson,* at 14 ("Under the relevant case law, this "careful blend of administrative and judicial enforcement powers" would ordinarily be sufficient to confer upon the NFIP primacy over other forms of relief with respect to claims handling disputes. However, Congress saw fit to go a step further and amend the Act in order to make more explicit in the text of Article IX that "all disputes arising from the handling of any claim under [an SFIP] are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended, and Federal common law." In the Court's view, this reflects a clear legislative intent to

limit the available remedies to policyholders for claims under the NFIP, and the Plaintiff's "[a]rtful invocation" of the "ubiquitous" and "controversial" civil RICO statute "cannot conceal the reality that the gravamen of the complaint" is a claims handling dispute falling squarely within the scope of the NFIP.")(citations omitted)).

Alternatively Plaintiff asserts that it is "logical" to conclude that "Congress intended for parties to employ causes of action outside the NFIA to sue WYO insurers and their adjusters in such circumstances." ECF No. 41. But the Court rejects this argument, in part, because both courts and Congress have deemed it inefficient to expose WYO carriers to extra-contractual liability arising from their administration of the NFIP, including, specifically, their claims handling activities. *See, e.g., Wright II*, 500 F.3d at 397. Indeed, the NFIP's subsidized reimbursement arrangement incentivizes private insurance companies to provide affordable flood loss coverage, and effectively sustains the existence of a national flood insurance industry, which otherwise might not be feasible. *See C.E.R.*, 386 F.3d at 270 (speculating that if FEMA refused to reimburse WYO carriers for their defense costs, "insurers would leave the [NFIP], driving the price of insurance higher"); *Moffett*, 457 F. Supp. 2d at 586 (observing that if FEMA regularly declined to reimburse litigation costs, "WYO carriers might well leave the Program in droves"); *cf. Jacobson*, 672 F.3d at 174 (noting that "many factors have made it uneconomic for the private insurance industry alone to make flood insurance available to those in need of such protection on reasonable terms and conditions").

Although the Plaintiff in this case characterizes the Defendant's conduct as being outside the scope of the NFIP arrangement, *See* ECF No. 41, the Plaintiff has no authority to make such a determination. Ultimately, such determinations are within the sole province of FEMA and the Federal Insurance Administrator to determine what actions are significantly outside the scope of the NFIP arrangement and/or involve agent negligence. See Moffett, 457 F.Supp.2d at 586.–87 ("The regulation leaves the definition of what is within and without the Arrangement to FEMA's General

Counsel").

Moreover, Plaintiff has made no allegation that FEMA has made any such finding; that it has declined to defend this action; or that any other rational basis exists for treating this action as outside the scope of the relevant NFIP agreement. *See Melanson,* at *16. This result is critical because Plaintiff's factual allegations, assuming them to be true, relate clearly to a claims handling dispute, which under Article IX is redress able *only* through a contract claim. *See Id.* The Plaintiff's conclusory allegations of mail and wire fraud do not require a different result. *See Id.*

For these reasons, the Court finds that on these facts, Plaintiff is preempted from pursuing this suit. *See also Melanson*, at *14. In reaching this conclusion, and in accordance with the reasoning stated above, the Court rejects the Plaintiff's argument that the allegations giving rise to its RICO claim are not preempted.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are **GRANTED**, and Plaintiff's case is **DISMISSED** with prejudice.

The Clerk is **DIRECTED** to send a copy of this Order to the respective Parities.

**IT IS SO ORDERED.**

Norfolk, Virginia
January 3 , 2017

Raymond A. Jackson
United States District Judge